R. T. WALTON, plaintiff in error, *vs.* J. S. ANDERSON *et al.*, defendants in error.

1. When the question was raised whether a *bona fide* purchaser of eighteen bales of cotton from a defendant in *fi. fa.*, in 1861, could hold it discharged from the lien of the judgment after two years possession, and the evidence was in conflict, the weight of it being in favor of the *bona fides* of the transaction, and the Court charged the jury that two years possession of the cotton, *bona fide*, and for valuable consideration, without notice, before the levy or service of the bill, discharged the cotton from the lien of the judgment, and the jury found for the defendant, who was the purchaser.

*Held,* That the charge of the Court, and the finding of the jury, were right under the rule laid down by this Court at this term in the case of *Chapman vs. Akin.* And a new trial will not be granted, because the Court may have charged too favorably to the defendant upon another ground taken in the case, which could not change the verdict, if the defendant was a *bona fide* purchaser of the cotton for a valuable consideration, which question was distinctly submitted to the jury by the charge as given by the Court, and found for the defendant.

Lien of judgments. Equity. Tried before E. H. POTTLE, Esq., presiding by consent. Wilkes Superior Court. March Term, 1869.

Judge Andrews having been of counsel in this cause, by consent, Mr. Pottle, an attorney of the Court, was made Judge *pro hac vice.* This case is that of *Anderson vs. Walton*, 35th Ga. R., 202. In March, 1861, Nicholas Taliaferro obtained a judgment against Phebe Stinson and Walton. While this judgment was unpaid, and a subsisting lien on the property of said defendants, Anderson bought of Mrs. Stinson eighteen bales of cotton. This was in November, 1865, before the Stay-law had been declared unconstitutional, and while the Ordinance of the Convention of 1865 subsisted. Walton, by bill, averred that Anderson bought said cotton with notice of this lien on it, mixed it with his own, so that it could not be identified, and was removing it out of the jurisdiction of the Court, that he, Walton, was only security for Mrs. Stinson, and wished injunction against the removal of the cotton, lest he should lose the money. Discovery was prayed for. The judgment having been entered

against Walton, as a principal, by amendment to his bill, Taliaferro was made a party complainant, and prayed that the judgment be corrected so as to be against him as security for Mrs. Stinson.

The answer of Anderson was that he bought the cotton in 1861, *bona fide*, and for a valuable consideration, without notice of said lien.

The judgment was corrected by an order *nunc pro tunc*, so as to make Walton a security thereon. At the trial the original *fi. fa.*, and the order so amending it, were read in evidence to the jury. Complainant then examined WALTON, who testified that Anderson, in the winter of 1861–2, he thought, bought said cotton from Mrs. Stinson, knowing it was hers, after witness had told him of said Taliaferro judgment, and of another in witness' favor against Mrs. Stinson; that he was at the depot when the first lot of twenty bales of cotton was stopped by this injunction, and saw in that lot twelve bales marked P S, and afterwards saw two or three other bales of it in Anderson's warehouse, two or three marked P S, and others B S; witness thought the marks B S, T B S and B B S had been changed. Another witness testified, that in the fall of 1865 he saw, in Anderson's warehouse, six bales of cotton marked B S, and one damaged bale marked P S. One JONES testified, that in 1862 or 1863, he, as agent for Mrs. Stinson, sold Anderson said eighteen bales of cotton, and received in payment for them an account due from Mrs. Stinson to Anderson, Jones' own account, and some cash; he did not tell Anderson it was Mrs. Stinson's cotton, but Anderson was her neighbor, and she was his customer; Jones was her nephew, and generally attended to her business, and he supposed Anderson knew the cotton belonged to his aunt; he knew none in the neighborhood whose initials were B S but Ben. Smith, a farmer, who did not deal in cotton. It was shown that cotton in the fall of 1865 sold for 36¼ cents per pound, and that five cents per pound was a fair allowance for expenses. The agent, at the depot where the cotton was stopped by the injunction, testified that the cotton was marked with "I. L. A. to J. J. R. & Co.," and with

other marks, as follows: three marked P S, two S S, seventeen B S, two B B S, and one B B; that eighteen bales were brought next day to the depot, and they and the twenty-four brought the first day were sent to Augusta at Anderson's request.

The defendant relied on his answer. Complainants' counsel requested the Court to charge the jury: 1st. That whether Anderson bought said cotton *bona fide*, and for valuable consideration, and without notice or not, he could not protect himself and obtain a good title to the cotton against the judgment by proof of two years' possession, as the plaintiff in *fi. fa.*, Taliaferro, could not enforce his judgment from the time of the purchase by Anderson to the end of the war. 2d. That if they believed from the evidence that the eighteen bales of cotton bought of Mrs. Stinson were mixed with the eighty-two bales belonging to Anderson, without marks of identification, and could not be identified, complainants were entitled to an account in equity from Anderson in the proportion that the whole cotton sold at the time of the service of the bill bore to that which was unsold.

The Court refused so to charge, but charged that, though it was a matter of doubt, his opinion was that he was bound by the decision of the Supreme Court to charge that two years' possession of the cotton, *bona fide*, and for a valuable consideration, without notice, before the levy or service of this bill, discharged said cotton from the lien of said judgment under 3525th section of the Code; that complainants were not entitled to recover for any of the bales of cotton so bought of Phebe Stinson, which were mixed with defendant's cotton, unless the particular identical bales of cotton so bought could be identified by sufficient proof, unless it was shown that the mixture was made wrongfully and fraudulently. The jury found for Anderson. Complainants' counsel say that the Court erred in refusing to charge as requested, and in charging as he did.

Walton *vs.* Anderson *et al.*

Toombs & DuBose, for plaintiffs in error.

Judge William Reese, for defendants in error, as to *bona fide* purchasers, cited sections 2388, 2599, 3037, 3525, Irwin's Code; 6th Ga. R., 111; 10th, 357; 14th, 159; 2 Spence's Eq. Pr., 756; 1 Story's Eq. Pr., 75 and note; 1 Peter's R., 443; 5th Ga. R., 156; 7th, 534.

Brown, C. J.

The testimony was in conflict in this case. But we think the weight of evidence was in favor of the defendant, and that he purchased the cotton *bona fide* for a valuable consideration, and without actual notice of the existence of the judgment. If so, and he held it for two years before the filing of this bill, and before any levy was made upon it, it was discharged from the lien of the judgment, under section 3525 of the Code, and his title was perfect, and it was a matter of no concern to the plaintiff whether he mixed it with other cotton, or what he did with it. See *Chapman vs. Akin, decided at this term.*

Taking this view of the case, we will not set aside the verdict and order a new trial, though the charge of the Court on the other ground taken in the case may have been too favorable to the defendant.

Judgment affirmed.